IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEWIS BOGGS,                          :
                Petitioner,           :
        v.                            : Case No. 3:14-cv-34-KRG-KAP
GERALD ROZUM, SUPERINTENDENT,         :
S.C.I. SOMERSET,                      :
                Respondent            :

## Report and Recommendation

### Recommendation

Petitioner Lewis Boggs is serving an 11-22 year aggregate sentence imposed by the Court of Common Pleas of Montgomery County and seeks a writ of habeas corpus under 28 U.S.C.§ 2254. I recommend that the petition be denied and that a certificate of appealability be denied.

### Report

The trial transcript and transcript of the hearing held on Boggs' petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.§ 9541 et seq. are part of the record at ECF no. 19 and ECF no. 19-1, respectively. The end of the transcript of the trial day of August 3, 2006, omitted from ECF no. 19 but emailed from a secretary at the District Attorney's Office to my deputy clerk on January 3, 2017, is at ECF no. 20.

To summarize the trial transcript, in the summer of 2003 Boggs was on parole and dating Francine Hansen. Boggs believed that as a result of his attempt to end the relationship Hansen "set him

up" by calling the Ambler Police Department on August 1, 2003, and reporting that Boggs had hurt her son. Boggs' parole officer, Kenneth Brown, arrested Boggs as a parole violator on August 4, 2003, and the search incident to arrest turned up a quantity of cocaine, packaged for sale, in Boggs' pockets. While in prison at S.C.I. Graterford as a result of parole revocation proceedings, Boggs and his cellmate, Pamfilio Dacua, discussed Boggs' situation. Dacua, who was already working as an informant for Philadelphia police on an unrelated matter, told authorities that Boggs was trying to solicit the murder of Hansen. The Pennsylvania State Police opened an investigation supervised by Trooper Bradley Getz. Trooper Wilfredo Moreno was assigned to play the part of "Jose Santiago," a supposed brother, half-brother, or cousin of Dacua who was involved in crime and who would be willing to kill Hansen. Boggs added Moreno/Santiago to his visitor list and Moreno met with Boggs to discuss the plan. Boggs made arrangements with Moreno for the method, for payment, and for the positive identification of Hansen. Conversations between Dacua and Boggs and between Moreno and Boggs were recorded, and were played to the jury. Conversations that Boggs had on the prison phone system were also recorded and played to the jury.

Boggs also wrote many letters that were intercepted by prison security, explaining to his teenage daughter that he was going to "take care of" Hansen, "to fuck her up," and that he needed a picture of Hansen from her or from her grandmother to give to the someone who was going to take care of Hansen; Boggs also wrote to his brother seeking assistance in obtaining drugs to pay Moreno for the hit; Boggs also wrote to Santiago/Moreno enclosing the photograph and explaining where he was in securing payment. These letters were also read to the jury.

The state police arrested Boggs on charges of solicitation to commit murder and two counts of criminal use of a communications facility on November 2, 2003. After his arrest, Boggs continued to write incriminating letters, including one stating "so then I put the hit out on her and my cellie was informant for the state police."

Boggs retained an attorney, Craig Kellerman, Esquire, and negotiated an agreement with the Montgomery County District Attorney's Office on Friday October 22, 2004, that called for Boggs to plead guilty and also to cooperate on an ongoing investigation (not involving Hansen) in exchange for whatever benefit that might bring to Boggs when he was sentenced on the charges involving Hansen. As part of that negotiation Boggs made a written statement

3

dated October 22, 2004, to Trooper David Milligan, admitting his solicitation of Hansen's murder. Boggs entered a guilty plea before the Honorable Steven T. O'Neill the following Monday, October 25, 2004.

For reasons not explained in the record (at trial Boggs testified without elaboration or followup that the initiative for the cooperation came from the District Attorney's Office and that after several months of inaction he "was told," presumably by Kellerman, "[t]hat they reneged") the cooperation anticipated did not materialize. Boggs moved to withdraw his guilty plea on May 18, 2005. Pennsylvania's standard for withdrawal of a guilty plea before sentencing is fairly liberal, and Judge O'Neill allowed Boggs to withdraw his plea on May 19, 2005.

Boggs retained new counsel, Diane Tosta, Esquire, and Tosta filed a motion to suppress the recordings of the conversations between Boggs and Dacua and between Boggs and Moreno, and the recordings of telephone calls made by Boggs on Graterford's phone system. Tosta also sought to suppress the written confession to Milligan that Boggs had generated in the course of the cooperation agreement. The Honorable Thomas P. Rogers denied Tosta's suppression motion on June 21, 2006.

The matter proceeded to trial before Judge Rogers and a jury from July 31 to August 3, 2006. Tosta, faced with the recorded conversations and phone calls and intercepted letters by Boggs, and the written statement to Milligan, pursued several overlapping lines of defense, one being an appeal for jury nullification on the grounds that the prosecution was nothing more than a vendetta by law enforcement against Boggs because Hansen was the daughter of a police officer, another being that Boggs was entrapped, and a third that to the extent Boggs intended that any ill befall Hansen it was her injury, not her death.

Tosta also had to confront the facts that Boggs had cocaine in his pockets when arrested by his parole officer and was in prison when the solicitation to commit murder took place. To minimize the prejudice from calling attention to Boggs' criminal record implied by being arrested by parole officer Brown, and to keep Brown off the stand to elaborate on Boggs' arrest, Tosta and the prosecutor agreed to a stipulation that was read to the jury at the outset of trial that informed the jury of Boggs' arrest (implicitly by a "police department" without mention of any parole violation), the discovery of 2.06 grams of cocaine, that Hansen testified against Boggs at "a hearing," and that Boggs received "a sentence" of incarceration as a result.

Tosta chiefly pursued the defense of entrapment, repeatedly directing her direct and cross examinations toward the theme that Dacua, and later Moreno, instigated and then created a prosecution out of nothing but some harmless rants by Boggs that at most amounted to a wish that someone beat up Hansen, not kill her. As Boggs put it, "for a case like this, the whole Graterford would be in jail," meaning that just about every man in Graterford had been in a similar conversation complaining about some wife or woman putting them in jail. Tosta repeatedly tried to steer Boggs, who frequently went off track in responding to questions, toward testimony that if Boggs intended any harm to Hansen it was suggested by Dacua, and that Dacua was playing both ends against the middle by first suggesting to Boggs that some girls should beat Hansen up, then using Boggs' equivocal remarks and letters (suggested by and ghostwritten by Dacua) to claim to law enforcement that Boggs was soliciting Hansen's death.

Part of Tosta's defense was presented through Boggs himself, who characterized Dacua as a big talker who lived in a fantasy world of mafia hitmen and who to further his own ends was attempting not only to entrap Boggs but also Boggs' brother too. The other main witness for this point was Dacua, whom Tosta called as a defense witness. Dacua was a fairly cooperative witness for

the defense (or, in the words of Judge Rogers, "Dacua has testified in every which way, direction, now that he could possibly testify"), agreeing with Tosta that Trooper Getz instructed him to "keep the dialogue going" with Boggs, and "to stay on him and make sure he secures the payment and the photo of the target." Dacua testified that he encouraged Boggs' letter writing, and helped fan the flames of Boggs' hurt into anger, in part by exploiting the atmosphere in prison of "macho gangster crap that we were out there talking" so that Boggs's threats would "kind of not keep up with the Joneses, but to be equal to the Joneses." The prosecution implied that Dacua was shading his testimony in Boggs' favor because at the time of trial Boggs and Dacua were again in the same prison, this time the Montgomery County Prison. On redirect Dacua expressly stated that the idea of a hit man was his and not Boggs' idea, and Dacua volunteered that Boggs wasn't really capable of murder. Dacua also volunteered that he had contacted the District Attorney, Getz, and Kellerman to convey this sentiment.

Boggs himself testified about how he would never have intended harm to Hansen. After responding to a question to that effect from Tosta, Boggs volunteered that the two of them had a relationship spanning 20 or 25 years, including during Hansen's marriage, that Hansen had put her husband out of the house and had

him locked up so that Boggs could move in with her, and that Boggs believed that if he were "to get out today and [call] Francine, Francine would come and pick me up." Boggs certainly let the jury see that his feelings about Hansen were ambivalent. Without any prompting from Tosta, Boggs described how Hansen, whom Boggs described as a "little drama queen a little bit," was prone to use the threat of making false accusations of parole violations to control the men in her life, including Boggs and Hansen's husband. At another point Boggs implied that Hansen had given him the money to buy the cocaine found on him when he was arrested as part of the set up, since the arrest took place at a meeting arranged by Hansen and Hansen had given him money with the knowledge that Boggs would use it for drugs. My read of the transcript is that Tosta then scrambled to minimize the damage Boggs was doing to his defense by these statements.

In an attempt to minimize the impact of the inculpatory statement given to Trooper Milligan that Tosta had tried unsuccessfully to exclude, Tosta examined Boggs about the plea negotiations, seeking to convey the impression that the statement was meaningless because it was just part of the paperwork Boggs was forced to go through to consummate the cooperation agreement. In response to this, for forty pages of cross examination the

prosecutor took Boggs through practically every threatening statement Boggs had made and for rhetorical effect repeatedly inquired whether Boggs in fact made these statements knowingly rather than as Dacua's puppet or because of some coercion by law enforcement. Along this line, the first question asked on cross examination was whether Boggs stated in the course of his plea colloquy only three days later that his guilty plea was knowing, intelligent and voluntary. After some sparring, Boggs stated that he "would have said anything to do a two to five" and get the case over with because it would end what Boggs alleged was the ongoing harassment of his family by law enforcement.

During this cross examination Tosta repeatedly attempted to derail the prosecutor by objecting to the relevance of the line of questioning, and on redirect Tosta attempted to rehabilitate Boggs by having him testify that some of the statements contained in the intercepted conversations and letters were being wilfully misinterpreted by the prosecution, and that the statement to Milligan had been in effect coerced by threats to his family, and that he would never harm Hansen because he was grateful to her for her care of his daughter during a medical operation. At the close of the evidence Tosta renewed her efforts to have the case dismissed for entrapment. Judge Rogers again denied the motion to

dismiss, but as he had promised in his pretrial rulings did give jury instructions on entrapment and on the voluntariness of confessions.

The jury convicted Boggs in about 90 minutes. Judge Rogers sentenced Boggs to an aggregate 11-22 years on October 12, 2006. Boggs, represented by Tosta, appealed, raising three claims: 1) that Boggs was entrapped as a matter of law; 2) that Judge Rogers erred in allowing Boggs' written statement generated by the cooperation negotiations into evidence; and 3) the prosecution committed prosecutorial conduct by referring at one point to Boggs' brother and family as being "dangerous."

The Pennsylvania Superior Court affirmed the conviction and sentence. Commonwealth v. Boggs, No. 3187 EDA 2006 Memorandum Opinion (Pa.Super. December 16, 2008). The panel rejected Tosta's first claim on the merits, finding that the evidence made entrapment a jury question and that there was plenty of evidence for the jury from which to find Boggs guilty.

The panel found Tosta's second claim was waived. The panel traced the arguments advanced in Tosta's efforts to exclude the written statement and the cooperation agreement from the suppression motion in September 2005, at the suppression hearing in January 2006, by a motion in limine immediately prior to trial

10

in July 2006, and in the statement of issues presented on appeal that Pa.R.App.P. 1925(b) requires. The panel found that Tosta had presented different arguments along the way and that three of her arguments presented on appeal had never been presented in the trial court; that none of the arguments presented on appeal had been presented in the Rule 1925 statement, and that the appellate brief itself inadequately presented Tosta's argument and "seriously deviated from the briefing requirements of the Rules of Appellate Procedure" Mem. op. at 22, because it "consist[ed] of three conclusory sentences," "d[id] not cite to the record," and contained a single citation to a single minimally relevant Pennsylvania case, Mem. op. at 20, and general citations to three federal cases, Kercheval v. United States, 274 U.S. 220 (1927), Bram v. United States, 168 U.S. 532 (1897), and Brady v. United States, 397 U.S. 742 (1970), cases which the panel found to be clearly distinguishable from Boggs' case.

Most significantly, the panel found that the one argument that Tosta did present clearly and consistently (although not in the Rule 1925 statement, thus waiving the argument) throughout was "waived" because it rested on no factual basis. (I believe that despite the court's use of the term "waived," its dismissal of a claim for lack of factual support is more appropriately considered

11

a determination on the merits.) Tosta argued before both the trial and appellate court that the use of the written statement by Boggs should be disallowed because it was part of the contractual agreement that called for Boggs to cooperate with the prosecution, and that the Commonwealth had breached the contract. As the appellate panel pointed out, there was no citation to the record or even factual elaboration that would support this claim, and what evidence the record did contain (described <u>supra</u> at 4) did not support a claim that the Commonwealth breached the agreement. Mem. op. 23-24.

The panel held the third claim waived for two reasons: as for the alleged improper reference to Boggs' family, the panel noted that the Rule 1925 statement referred only to an alleged prejudicial characterization of Boggs' brother, and not to one of his family. As for the alleged improper portrayal of Boggs' brother itself, any claim was waived because there were no contemporaneous objections at the time these alleged references were made at trial. The panel went on to discuss one episode at trial and concluded that if it were to reach the merits as to that episode, defense counsel had opened the door to the subject by questioning Dacua in support of the defense that law enforcement was targeting Boggs

because of hostility toward Boggs by law enforcement officers. Mem.
op. at 25 n.14.

Boggs began a timely collateral attack on his conviction
by filing a PCRA petition on September 4, 2009. Joseph Hylan,
Esquire, was appointed to represent Boggs and Hylan filed an
amended petition in November 2009, attacking Tosta's decision not
to seek severance of the drug charge from the solicitation charge,
as well as claiming that Tosta had committed ineffective assistance
of counsel by waiving claims on direct appeal through deficient
briefing as described in the Pennsylvania Superior Court opinion.
Hylan expressly asserted that he had no plans to present evidence
other than Boggs' testimony about "the issue of jurisdiction" and
Tosta's alleged failure to inform him of the denial of the direct
appeal, because Hylan's claims were based on the record as it
existed. There is nothing in the record to indicate that Hylan's
decision to proceed this way was made without consideration of the
record, or even that Boggs objected to this strategy.

Judge Rogers held an evidentiary hearing on May 5, 2010,
at which Boggs and Tosta testified. Hylan questioned Tosta about
her decision not to seek severance of the drug charges against
Boggs from the solicitation charges. Tosta explained her reasons
for not seeking severance, and testified that she had also

explained her reasons to Boggs and obtained his agreement to that tactic.

Judge Rogers denied relief on June 30, 2011, and Hylan appealed to the Pennsylvania Superior Court raising one claim, that Tosta had been ineffective for failing to move to sever the drug charges. The appellate court adopted Judge Rogers' Rule 1925 opinion holding that Tosta had reasonably chosen not to seek severance because evidence relevant to the drug charges would have been admissible to prove Boggs' motive to solicit Hansen's death if the solicitation case had been tried separately. Judge Rogers additionally noted that Boggs had not shown prejudice because there was no evidence that filing a motion to sever "would have had a greater likelihood of success." PCRA op. at 24. Neither Judge Rogers nor the appellate panel explained whether this comment meant that if such a motion had been filed it would have been denied, or whether if such a motion had been filed and granted the evidence presented at trial would have been the same. See Commonwealth v. Boggs, No. 1903 EDA 2011 Memorandum Opinion at 8 (Pa.Super. March 5, 2013).

Boggs then filed his federal petition. In Claims One through Four Boggs asserts the three claims raised by Tosta on direct appeal (Claim Three expands on Claim Two, Tosta's claim that

the trial court erred by not excluding evidence relating to the written statement Boggs made in the course of negotiations over the cooperation agreement, by asserting that the use of the statement was due to a stratagem concocted by the prosecution to deceive Boggs) and Claim Five is the one claim of Tosta's ineffectiveness that was raised by Hylan on collateral appeal.

Claims Six through Eleven assert that Tosta provided ineffective assistance of counsel at trial. Boggs asserts that this court can hear the unexhausted claims under Martinez v. Ryan, 132 S.Ct. 1309 (2012), because Hylan was ineffective for not presenting them.

Claim One, a repeat of Tosta's argument that entrapment was proved as a matter of law, is exhausted. Contrary to the respondent's assertion, this is a claim of constitutional dimensions. See e.g. Jacobson v. United States, 503 U.S. 540, 548 (1992). In the context of this case, it is equivalent to a claim that the evidence was insufficient to support the verdict. In a habeas corpus proceeding, where the sufficiency of the evidence is in contention:

[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction .... does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. ...Instead, the relevant question is whether, after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Byrd, 105 F.3d 145, 147 (3d Cir.), cert. denied, 520

U.S. 1268 (1997)(quoting Jackson v. Virginia, 443 U.S. 307, 318-19

(1979)(internal citations and quotes omitted); Orban v. Vaughn, 123

F.3d 727, 731-33 (3d Cir.1997). There is no plausible argument that

would support an insufficiency claim based on entrapment. As the

state courts recognized, the defense was one based on the jury's

perception of the witnesses' credibility and it would be improper

for a state court on direct review, much less a federal court on

habeas review, to substitute for the jury's judgment one based only

on a review of a transcript. But in case there is any doubt, the

transcript (even without the recordings played to the jury which

are not set out in the transcript) contains sufficient evidence to

sustain the verdicts.

Claim Five is a repeat of Hylan's claim on collateral

attack that Tosta was ineffective for failing to move for

severance. Hylan presented this claim at the PCRA hearing and to

the Pennsylvania Superior Court, so it too is exhausted. Tosta had

a reasonable basis for not seeking severance because Judge Rogers

would not have granted severance if it had been sought, and because

even if Judge Rogers had granted severance the evidence of Boggs'

drug possession (and collateral testimony about his parole supervision) would have been admissible. Even if this court could exercise de novo review of Tosta's stewardship her course of not seeking severance and stipulating to the facts surrounding the arrest was not ineffective.

And of course this court's standard of review is not de novo. Review in federal habeas proceedings is fundamentally different from that in appellate proceedings in state court. The Supreme Court wrote, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), that:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

As a result of Congress' agreement that habeas proceedings are not just another round of appeals, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified in part at 28 U.S.C.§ 2241-55, placed limits on a federal court's scope of review of federal claims previously adjudicated in state court. See Bell v. Cone, 535 U.S. 685, 693 (2002). In relevant part, 28 U.S.C.§ 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim –
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Congress' use of the adjective "unreasonable" means that it is not sufficient for a petitioner to convince a federal court that a state court proceeding contained errors. A petitioner must show an extreme malfunction in his prosecution. Harrington v. Richter, 562 U.S. 86, 102 (2011).

Challenges under the "contrary to" clause of Section 2254(d)(1), relatively rare, are when a state court "applies a rule that contradicts the governing law set forth" in Supreme Court precedent, Williams v. Taylor, 529 U.S. 362, 405 (2000), or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different" from the Supreme Court, id. at 406. There are no "contrary to" challenges in this petition.

A challenge that there was an "unreasonable application" of federal law focuses on whether the state court unreasonably applied Supreme Court precedent (but not what lower federal courts have said about Supreme Court precedent). See Renico v. Lett, 559

U.S. 766, 778-79 (2010); White v. Woodall, 134 S.Ct. 1697, 1702 (2014). A state court decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," Williams v. Taylor, supra, 529 U.S. at 407, so egregiously that it is "beyond any possibility for fairminded disagreement." Harrington v. Richter, supra, 562 U.S. at 103.

Habeas review of ineffective assistance of counsel claims generally proceeds under 28 U.S.C.§ 2254(d)(1)'s "unreasonable application" prong. See e.g. Cullen v. Pinholster, 563 U.S. 170 (2011); Harrington v Richter, supra; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

Ineffectiveness claims themselves are governed by the familiar two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984): a petitioner must first show that "counsel's representation fell below an objective standard of reasonableness," Id. at 688, and without benefit of hindsight show that the challenged action of counsel could not be considered sound

strategy.  Id. at 689.  Second, a petitioner must prove prejudice, that is, "that counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable." Id. at 687.  Phrased another way, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

Taking Strickland and AEDPA together, a federal court's review in habeas of a state court's assessment of counsel's stewardship must be doubly deferential.  Knowles v. Mirzayance, supra, 556 U.S. at 123.

Unless the petitioner shows that the state court did not afford any fair opportunity to make a record or that he could not because the claim is based on a new rule of law or newly discovered evidence -and neither of those conditions exists here- the evidence that this court must use in reviewing claims decided by the state court is the evidence presented to the state court.  See Cullen v Pinholster, supra; Brown v. Wenerowicz, 663 F.3d 619, 629 (3d Cir.2011), cert. denied, 132 S.Ct. 1934 (2012).

Based on the trial transcript and the PCRA transcript, the finding that Tosta was not ineffective in deciding not to seek

severance of the charges against Boggs was not unreasonably wrong. Under AEDPA, that ends Claim Five. If review were de novo, I would observe that some of the benefit that Tosta gained on day one of the trial by neutralizing discussion of the drug charges was undone on the last day of trial by Boggs' unnecessary discussion of drugs and parole, but with a severance and without a stipulation evidence about the drug charges would have been admissible in the solicitation of homicide case to prove motive. Tosta's strategy caused no prejudice to Boggs' defense.

The rest of Boggs' claims are defaulted. Claims Two and Three (in his Reply at ECF no. 13 Boggs has withdrawn Claim Four) restate Tosta's claims that the Pennsylvania Superior Court held to be waived for failure to comply with Pennsylvania's appellate rules. Those rules, it should be noted, are similar to those used in this circuit in review of federal appellate briefs, see United States v. Joseph, 730 F.3d 336, 341 (3d Cir. 2013)("[T]o preserve a suppression argument, a party must make the same argument in the District Court that he makes on appeal.") The Pennsylvania Superior Court's finding of waiver -and there is no question that the finding reasonably applied settled precedent- because it is an adequate and independent basis for the dismissal of Boggs' direct appeal claims, ordinarily precludes this court from reviewing those

claims. Coleman v. Thompson, 501 U.S. 722, 749 (1991). To the extent what the Pennsylvania Superior Court called waiver of a portion of Claim Two for lack of a factual foundation was really a ruling on the merits, it easily passes muster under AEDPA.

Boggs can obtain review of procedurally defaulted claims by showing a miscarriage of justice -that is, a credible showing of actual innocence, see McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013)- or by showing cause for his default and prejudice. See e.g. Murray v. Carrier, 477 U.S. 478, 492 (1986)("[W]e hold that counsel's failure to raise a *particular* claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts.") Cause for a procedural default is most often shown by proof that counsel was ineffective at a stage of the proceeding at which the petitioner was entitled to the effective assistance of counsel, that the factual basis for a claim was not available to counsel, or that state officials made compliance with the procedural rule impracticable. See Murray v. Carrier, 477 U.S. at 488. Prejudice is shown when the error "infect[ed] [an] entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. at 494 (internal quotations omitted).

There is no miscarriage of justice exception. As the Court of Appeals remarked in Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004), that ordinarily requires new and trustworthy scientific evidence, eyewitness accounts, or physical evidence. A reargument about the evidence presented at trial is not enough.

Turning to the cause and prejudice standard, Boggs asserts that cause exists to review Claims Two and Three because his counsel was ineffective in failing to preserve them properly, Tosta at trial under Strickland v. Washington and on direct appeal under Evitts v. Lucey, 469 U.S. 387 (1985), and Hylan in the PCRA proceedings under Martinez v. Ryan.

Coleman v. Thompson holds that because Boggs bears the consequences of attorney error after the first direct appeal, Hylan's exhaustion of the single claim of ineffectiveness contained in Claim Five does not constitute cause to excuse the default of any other claim. Martinez v. Ryan limits Coleman v. Thompson by holding that attorney error in collateral proceedings may sometimes establish cause for the default of a claim of ineffective assistance of trial counsel. Martinez v. Ryan applies when the attorney error in collateral proceedings is itself ineffectiveness under the Strickland v. Washington standard, and where the underlying ineffectiveness of trial counsel claim is a

23

"substantial" one. Martinez v. Ryan, 132 S.Ct. at 1318. However, Martinez v. Ryan is limited to defaults in collateral proceedings caused by ineffective counsel at the trial level, not in appeals. Norris v. Brooks, 794 F.3d 401, 404-05 (3d Cir. 2015), cert. denied, 136 S.Ct. 1227 (2016).

Thus, proof of Hylan's ineffectiveness in the PCRA proceeding in failing to raise a substantial claim of Tosta's ineffectiveness would constitute cause to excuse Hylan's default of claims that Tosta was ineffective at trial or on direct appeal. Claims Two and Three, however, are not claims of Tosta's ineffectiveness on direct appeal, they are restatements of Tosta's claims on direct appeal. Martinez v. Ryan does not apply. Not only that, if Claims Two and Three were claims of Tosta's ineffectiveness, Hylan did argue a claim of ineffectiveness based on Tosta's allegedly inadequate brief writing before Judge Rogers, seeking as relief a reinstatement of Boggs' direct appeal. The default of these claims would have been caused by Hylan not including them on appeal. Any claim that this would be "cause" to excuse Hylan's default would fail after Norris v. Brooks.

Claims Six through Eleven, which **are** claims that Tosta provided ineffective assistance of counsel, allege that Tosta failed to make objections, or call witnesses, or pursue certain

legal strategies at trial. Hylan made no attempt to present any evidence to develop these claims at the PCRA hearing, Hylan did not present them on appeal, and Boggs is now unable to raise them in state court. They are defaulted unless Boggs can show that the Martinez v. Ryan exception applies.

Martinez v. Ryan does not allow Boggs to present those claims. Boggs must first show that Hylan was ineffective. Boggs makes no effort to show that Hylan had no reasonable basis for pursuing the claim he did and not pursuing these other claims. Boggs also fails to show that the underlying claims of Tosta's ineffectiveness allegedly defaulted by Hylan's ineffectiveness are substantial. The standard for whether a defaulted claim is substantial is whether reasonable jurists could find the claims have merit or at least deserve further exploration. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). For claims of Tosta's ineffectiveness, Boggs must show that evidence in support of both prongs of the Strickland v. Washington standard is substantial to deserve further exploration.

First, it is appropriate to note that if Boggs had presented these six claims to the state courts and the state courts had ruled on them adversely to Boggs this court's review would be the extremely deferential review prescribed by AEDPA. There is no

evidence that Boggs, who testified before Judge Rogers in the PCRA hearing, ever sought to introduce evidence relevant to these claims or even called Judge Rogers' attention to a disagreement with Hylan's strategy, and as already stated there is no evidence that Hylan's decision to pursue some claims but not these was made without a reasoned judgment. <u>Martinez v. Ryan</u> does not allow habeas petitioners who fail to make a claim until the federal habeas stage to obtain an evidentiary hearing and a <u>de novo</u> evaluation of the claim on the mere assertion that PCRA counsel was ineffective.

Second, all six of Boggs' ineffectiveness claims amount to assertions that Tosta should have done "something else." Every attorney can always do something else. <u>Strickland v. Washington</u> requires that Boggs show that the decisions Tosta **did** make were not reasonably designed to advance some plausible defense. Boggs cannot claim ineffectiveness, as he does in Claim Six, based on Tosta's failure to object to the prosecution's mention of the failed cooperation agreement and guilty plea in its cross examination of Boggs, without acknowledging Tosta's repeated objection to almost every piece of evidence presented by the prosecution, most vociferously (and in the transcript of the pretrial proceedings on July 31, 2006, almost rudely) to the use of the statement Boggs

gave to Milligan. She was unsuccessful. Not making one more unsuccessful objection is not ineffectiveness. Boggs points to one specific instance where Tosta did not object to mention of Boggs' entry of a guilty plea, at the beginning of the prosecutor's cross examination of Boggs on the last day of trial (ECF no. 20, page 80, described above). A court considering an objection to that line of questioning could reasonably hold that the prosecutor was legitimately responding to Tosta's direct examination of Boggs that was designed to minimize the contents of the statement to Milligan. Furthermore, in my opinion Tosta made an effective (albeit unsuccessful) effort to rehabilitate Boggs on re-direct. There was no ineffectiveness.

Claim Seven asserts that Tosta should have called Kellerman to establish that there was a contractual agreement forbidding the use of Boggs' statement to Milligan, or at least that Kellerman advised Boggs to that effect. This is a classic missing witness claim, one that Boggs does not support with any evidence that Kellerman was available and would have so testified, or that Kellerman's testimony was known to Tosta at the time of trial. In light of the arguments Tosta did make, it is incredible that Tosta would not have presented such testimony by Kellerman if it existed. But Boggs must first get past the threshold step of

27

showing ineffectiveness by Hylan in not raising this claim at the PCRA hearing. There is no evidence of Hylan's ineffectiveness because there is no indication that Hylan himself knew about Kellerman's alleged advice to Boggs. Claim Seven is as insubstantial as they come.

Boggs, in Claim Eight, sets out what Boggs characterizes as extensive evidence of renunciation that was presented and then asserts that Tosta was ineffective for failing to present a renunciation defense. That is logically self-contradictory. Boggs also claims that in light of the renunciation evidence presented Tosta was ineffective for failing to request a renunciation instruction. That is not logically contradictory, but it is legally contradictory. The defense Tosta pursued was entrapment, and her fallback position was that anything that Boggs did say was not solicitation of homicide, but mere bluster, or at the worst a solicitation of assault. Renunciation is a different defense, which concedes an initial participation in but later withdrawal from a scheme. See Commonwealth v. Joseph, 848 A.2d 934, 941 (Pa.Super.2004)(quoting 18 Pa.C.S.A.§ 902(b)). Requesting an renunciation instruction would be (or at least could be portrayed by the prosecution as) contradicting the defense Tosta did pursue.

But more simply, and again overlooking the layer of Hylan's ineffectiveness that would have to be established, there was no substantial evidence of renunciation for Tosta to overlook. Dacua, but not Boggs, testified that he, Dacua, attempted at the eleventh hour to convey Boggs' lack of desire to harm Hansen. There was no testimony by anyone that Dacua - assuming that Dacua was truthful - did so on Boggs' instructions, or even with Boggs' knowledge. Boggs' testimony about any plot to kill Hansen was, consistent with Tosta's defense, that he didn't say it or said it but didn't mean it, never that he had second thoughts.

Claim Nine asserts that presenting Dacua was ineffective. Except for conclusory assertions as to how Boggs thinks the jury may have used Dacua's testimony, Boggs does not begin to explain why. If my review were de novo, I would say Dacua was the best witness Tosta called. Boggs makes no attempt to explain how Hylan was ineffective in failing to present this claim, but I suggest that if at the PCRA hearing Hylan had told Judge Rogers that Tosta was ineffective for calling Dacua, Judge Rogers would have laughed at Hylan. The claim of Tosta's ineffectiveness is insubstantial, and that of Hylan's is not explained.

Claim Ten is a pure fishing expedition asserting that some agreement existed between the prosecution and Dacua, that a

<u>Brady v. Maryland</u> violation occurred because this agreement (the existence of which Dacua denied on the stand) was not disclosed, and that Tosta was therefore ineffective for not making a <u>Brady</u> claim. I have never heard of a <u>Brady</u> claim without <u>Brady</u> material, and since there is no evidence for the first premise in the argument, it collapses. Any claim either of Hylan's ineffectiveness in not pursuing Tosta's ineffectiveness, or of Tosta's ineffectiveness in failing to make a <u>Brady</u> claim is insubstantial.

Besides the claim of a withheld agreement, Boggs asserts that he had actual knowledge of privileges extended to Dacua at the time Dacua was hatching the plot to kill Hansen and told "all counsel" about it. A <u>Brady</u> violation requires that material be withheld from the defense: a defendant cannot sit on evidence obtained independently of the prosecution and then complain because the prosecution did not disclose it. If Boggs means that he believes Tosta should have asked Dacua questions about this topic at trial, that is not a substantial claim of Tosta's ineffectiveness, much less that Hylan was ineffective in not pursuing it.

Claim Eleven asserts that Tosta failed to assert Fourth Amendment claims. To excuse default of any claim that Tosta was ineffective in failing to suppress Boggs' statements and letters,

30

Boggs must start with some evidence of Hylan's ineffectiveness in failing to preserve this claim. Judge Rogers' thorough opinion of June 21, 2006 in support of his order denying suppression, ECF no. 11 Exhibit C, would tell any reasonable counsel that Tosta was not ineffective in her suppression efforts, and there is no other evidence that Hylan was ineffective that would excuse any default.

The petition should be denied. Because a certificate of appealability should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and Boggs has not made such a showing, a certificate of appealability should be denied.

Pursuant to 28 U.S.C. § 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.


DATE: 5 January 2017

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Lewis Boggs JY-1181
S.C.I. Mahanoy
301 Morea Road
Frackville, PA 17932